Mr. Justice Huger
delivered the opinion oí the couit.
At common law, on the non-payment, of the money at the lime limited, the mortgagee's estate becomes absolute. Rut by the act of ! 791, his íút'iaíion 1 s altered. The morí • gager is declared to be the owner of the land, even after the time for the payment of the money has elapsed; and the land mortgaged is consul eved only an a pledge to ee-cure the payment of the mosey due. This act prevents the mortgagee from proceeding against the land by ejectment, which could be done at common law ; but the mortgagee is still at liberty to bring an action of debt on bis bond, and to proceed against the property of the mortgagor generally ; or he may apply to the Court of Common Pleas, after judgment, for an order to sell the mortgaged land, provided any judgment bar. been obtained against the mortgagor subsequent to the. date of the mortgage, and prior to the judgment by the mortgage;,'. Should another judgment creditor proceed to sell the property mortgaged to satisfy his own demand, he could only sell what really belonged to the defendant; that is, the land sub ject to the lieu of the mortgage : and the purchaser having notice r," the mortgage, (and recording is notice,) could only purchase' subject to the mortgage ; in other words, all that the mortgagor possesses, and therefore ail that could be sold, is the equity of redemption. Nor is the case altered as it respects the quantity of interest sold, by the mortgagee be - coming the purchaser. He could only purchase what could be legally sold, the equity ,of redemption. But having purchased the equity of redemption, the’whble estate becomes united in him.
In the case of Jackson vs. Hull, (10 Johnson, 431,) :lic mortgagee sold under his own judgment, and received the proceeds. He then brought an action of ejectment against the purchaser, and recovered, and the' judgment *401 ivas sustained on tbe ground that only tbe equity of redemption had been sold under the first judgment, and tbe mortgagee was still entitled to tbe estate, subject only td tbe equity of redemption.
The act of 1791 has affected in some degree tbe parties to a mortgage; but when construed in conjunction with tbe act of 1797, which declared that a release, of tbe equity of redemption to tbe mortgagee shall have the same effect as if the act of 1791 had not been passed, it appears that no other change has been produced but to prevent the mortgagee from bringing an action of ejectment.
In the case of the Executors of Ashe vs. Executor of Livingston, (2 Bay, 80,) the Court is supposed to have established a different rule. But this is a mistake. In that case, the contest was between a judgment creditor and a prior mortgagee for the assets of the estate of Ber-wick, There is no question that a mortgagee may forego his mortgage, and proceed against the' estate generally ; and there is as little question that under the executor’s act of this State, a prior mortgage is preferred to a subsequent judgment. At the death of Berwick, the mortgage of Ashe, though misplaced, was in existence, and though not recorded, was binding-. And the mortgage of Ashe ought to have been satisfied before the judgment of Livingston was paid, which from having been obtained subsequent to Berwick's death, must have been junior to Ashe's mortgage. The Executors of Ashe, whose prior claim had been thus unintentionally neglected, thought proper to follow the money into the hands of the Executor of Livingston, to whom it had been improperly paid, rather than proceed against the land which was in the hands of a bonafde purchaser. The court then only decided 'that a prior mortgage was preferred under the executor’s act' to a junior judgment; and that an action of assumpsit would lie.
But independent of the executor’s act, the case oi Livingston ads. Ashe, is very distinguishable from the one in question. The mortgage was executed by Berwick many rears prior to 1791 : and on the failure oí Berwick to pav *402 the money, the estate had become absolute in Ashe. It was then his estate that was sold and not Berwick's. The sheriff, it is true, sold it as Berwick's, but it was evidently a mistake arising from an ignorance of Ashe's mortgage. This mistake or error was hot conclusive on Ashe ; and this representative might have brought his action of ejectment, and must have recovered. But it was perfectly in. his power to acquiesce in, the sale, and to pursue the purchase money, which he did, and was supported in so doing by the court.
Nor does the case of Ex-Parte Stagg, (1 Nott McCord, 405,) decided in January Term, 1819, interfere with the view I have taken of this case. In that case, the only question made, was as to the priority of the liens.— And the court decided that a mortgage recorded before a judgment was confessed,.though both were done on the same day, was to be preferred. Although it does not appear from the statement of that case, I am informed by the Judge who delivered the opinion of the court, that it was understood that both parties had agreed that the whole interest in the land should be sold by the sheriff, and that the money made should be paid as the court should decide. The fact was, that the property was not sufficient to satisfy the mortgagee, and therefore the equity of redemption was of no value. If the judgment creditor could not cpme in with the mortgagee, he could get nothing.
I am of opinion therefore that the order of the City Court ought to be reversed.
Justices Gantt and Johnson, concurred.